UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Raymond A. Stankunas

    v.                                              Civil No. 06-cv-44-SM

Joseph Statkus, et al.

**REPORT AND RECOMMENDATION**

    Plaintiff Raymond A. Stankunas moves for a preliminary injunction seeking an order prohibiting Defendants Commissioner Joseph Statkus, Moderator Franklin P. Sylvia, Clerk Nan McCarthy and the Emerald Lake Village District from interfering with plaintiff's duties, rights and privileges as a Commissioner of the Emerald Lake Village District Board of Commissioners without further order of the court, or unless a new election for the office that is the subject of this controversy is held. Defendants object. The Court held an evidentiary hearing on Plaintiff's motion on May 4, 2006. For the reasons set forth below, I recommend that Plaintiff's motion be denied.

Background

    Plaintiff was formerly a Commissioner of the Emerald Lake Village District Board of Commissioners. The Village District is

a municipal entity in the Town of Hillsborough, New Hampshire. The Annual District Meeting was held on Friday, January 20, 2006, and pursuant to Warrant, elections were held for two Commissioners, the Moderator, the Clerk and the Treasurer. Plaintiff sought re-election as Commissioner for a three-year term.  Melanie Netto, the official Clerk during the disputed election, testified that she, along with the supervisor of the checklist for the Town of Hillsborough and two other persons, counted the ballots for the election.  According to Ms. Netto, Plaintiff received 35 votes in the election.  The winning candidate, Debbie Gilbert, received 67 votes.

Plaintiff claims that he filed a request for a recount under New Hampshire Revised Statutes Annotated ("RSA") 669:30.[1] Although Plaintiff knew that Ms. Netto was the Clerk, he testified that he filed his request at the district office with

---

[1]The statute provides that:

> Any person for whom a vote was cast and recorded for any office at a town election may, no later than the Friday following the election, apply in writing to the town clerk for a recount of the ballots cast for such office, the clerk shall appoint a time for the recount not earlier than 5 days nor later than 10 days after the receipt of said application.

RSA 669:30.

Sharon Linstrom, who was at that time the District Secretary, because neither Ms. Netto nor the deputy clerk was in the office when he arrived with his application on Friday, January 27, 2006. According to Plaintiff, Ms. Linstrom stamped his recount request received. Plaintiff further testified that he left a check to pay the fee required for obtaining a recount, and that he made a copy of his request for himself. See Pl.'s Ex. 1. The copy of Plaintiff's recount request in evidence has been stamped "RECEIVED," but there is neither a signature nor initials on the "By" line indicating who received the document, and Ms. Linstrom did not testify at the hearing. Plaintiff admits that he had keys to the district office on January 27, 2006, and thereby had access to the stamp.

   Plaintiff testified that on Sunday, January 29, 2006, he received an envelope at his residence with a notice from Defendant Sylvia. The notice informed Plaintiff that Ms. Gilbert had been sworn in for the Commissioner position on January 28, 2006, and that Plaintiff's term as Commissioner was officially over. Enclosed with the notice was a document purportedly containing the text of an e-mail message from an Assistant New Hampshire Attorney General, which states that "outgoing officers

are not at liberty to delay the taking of oaths once the period for recount has run and no recount has been requested for the office at issue." See Pl.'s Ex. 2.  Despite Plaintiff's alleged recount request, no recount was scheduled or held before the period for a recount expired.

Plaintiff alleges, on information and belief, that the ballots were not properly secured in the event that a recount was ordered.[2]  Plaintiff admits, however, that he never filed a complaint with any state authority alleging that there were election irregularities.  Moreover, there is no evidence in the record that Plaintiff ever indicated to anyone that he thought that the election results were wrong, or that there was any impropriety in the vote counting.

Ms. Netto testified that shortly after the election was held, Plaintiff called her at her home to tell her that he was thinking about requesting a recount.  According to Ms. Netto, Plaintiff stated that the reason that he would make the request

---

[2] Ms. Netto testified that after all of the ballots were counted, she kept them at her house in a standard square box. She testified that all of the ballots had been accounted for, and she did not alter any of them.  Ms. Netto had no reason to believe that anyone got into her house when she was not present, as she kept it locked.  She transferred the ballots to the new district clerk in the beginning of March 2006.

was because he intended to have a secret meeting with Debbie Gilbert and Fred Sanborn, the newly elected commissioners. When Ms. Netto asked Plaintiff what the meeting was going to be about, Plaintiff told her that it was to "fix things with Sharon." Ms. Netto testified that Plaintiff told her that he was going to rescind his request at the February 3, 2006 meeting. Ms. Netto testified that she understood Plaintiff's comments to mean that he wanted to prevent Ms. Lindstrom from being fired.

During his testimony, Plaintiff admitted that the week prior to the election he and the other district commissioners held a meeting. The contents of that meeting, however, are now being contested. Plaintiff contends that the other commissioners voted to terminate Ms. Lindstrom's employment. The other commissioners deny that assertion.

Ms. Netto testified that Debbie Gilbert and Defendant Sylvia sought advice from the New Hampshire Attorney General's Office after she told them that Plaintiff was considering requesting a recount. Defendant Sylvia went to Ms. Netto's house, on Friday, January 27, 2006, which was Plaintiff's deadline for requesting a recount, to find out whether Plaintiff had submitted a request. Ms. Netto informed Defendant Sylvia that she had not received an

application from Plaintiff.  Defendant Sylvia then told Ms. Netto that a swearing-in ceremony for the newly-elected officers was going to be held the next day.

Ms. Netto testified that Plaintiff called her on Saturday, January 28, 2006, to inquire about the swearing-in ceremony, which had been scheduled to take place that afternoon.  Plaintiff told Ms. Netto at that time that he had requested a recount.  After receiving Plaintiff's call, Ms. Netto spoke with Defendant Statkus, and tried, unsuccessfully, to contact Ms. Linstrom.  Ms. Netto asked Defendant Statkus to look for Plaintiff's recount request at the district office.

Defendant Statkus testified that he went to the district office on January 28, 2006 to search for Plaintiff's recount request.  The office, which consists of only one room, has two desks, a computer, a half dozen in-boxes and out-boxes and filing cabinets.  Defendant Statkus testified that he searched every conspicuous place in the office for about 45 minutes, but he did not see Plaintiff's recount request.  He further testified that Ms. Lindstrom did not send him an e-mail mentioning Plaintiff's recount request, even though Ms. Linstrom had sent him daily e-mails about business matters for about four months.  Defendant

6

Statkus called Ms. Netto to inform her that he could not find Plaintiff's recount request in the office.

Ms. Netto testified that the first time she saw Plaintiff's recount request was on Tuesday, January 31, 2006, when Ms. Lindstrom handed it to her.  When Ms. Netto asked Ms. Lindstrom why she did not give her Plaintiff's request earlier, Ms. Lindstrom told her that she was hiding it from Defendant Statkus. Ms. Netto further testified that Ms. Lindstrom and Defendant Statkus hated each other, but she did not otherwise clarify what purpose hiding the recount request was intended to serve.

In response to the Court's inquiry, Ms. Netto acknowledged that there was a stamp like the one used on Plaintiff's recount request in the district office.  She testified, however, that she did not use that stamp while she was the Clerk.

The evidence shows that Plaintiff prepared an agenda for the public meeting scheduled to be held on February 3, 2006, as had been his practice.  See Pl.'s Ex. 3.[3]  One of the items that Plaintiff included on the agenda was "Swearing in of New Officers."  Id.  When Defendant Statkus saw the agenda, he

---

[3]Plaintiff did not dispute the accuracy of the legend at the bottom of the document, which indicates that it was created on January 31, 2006 at 05:12 p.m.  See id.  Thus, the agenda was apparently prepared after Plaintiff's term as Commissioner ended.

circled the agenda item on the document, "Non-Public Session, RSA 91-A:3, II(a)," and wrote "NICE TRY RAY." Id. Plaintiff alleges that Defendant Sylvia announced at the February 3, 2006 public meeting that "there would be no recount," and that Plaintiff "could not win a recount."

Discussion

I. <u>Subject Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case." <u>Bonas v. Town of North Smithfield</u>, 265 F.3d 69, 73 (1st Cir. 2001). The federal courts are obligated to ensure that they have jurisdiction to decide the cases before them even if the parties do not dispute the court's jurisdiction. See <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire <u>sua sponte</u> into its own subject matter jurisdiction"); <u>Prou v. United States</u>, 199 F.3d 37, 45 (1st Cir. 1999) ("the question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue even though the parties have failed to raise it").

Plaintiff filed this action on February 6, 2006 claiming

that this court had jurisdiction over this case under 42 U.S.C. § 1983 because he alleges that "the actions of the defendants were taken in their official capacities, under the color of authority, to deny plaintiff's rights under New Hampshire's election and recount laws."  Compl., ¶ 2.  In response to the Court's inquiry regarding subject matter jurisdiction at the evidentiary hearing, the Defendants did not dispute that this court has jurisdiction over this case under § 1983.  The Court disagrees.

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  The Supreme Court has held that in order to state a claim under § 1983, plaintiffs "must establish that they were deprived of a right secured by the Constitution or the laws of the United States, and that the alleged deprivation was committed under color of state law."  See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); see also Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 700-01 (1978) (finding that § 1983 provides a remedy "against all forms

of official violation of federally protected rights."). Thus, a claim based on the deprivation of a right secured by state law is not cognizable in a § 1983 action. See Fournier v. Reardon, 160 F.3d 754, 757 (1st Cir. 1998) ("It is well established that a state actor's failure to observe a duty imposed by state law, standing alone, is not sufficient to establish a § 1983 claim."); Lecrenski Bros., Inc. v. Johnson, 312 F. Supp. 2d 117, 120 (D. Mass. 2004) (finding that § 1983 did not provide a remedy for violation of a right based on a state constitution).

"Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." Bonas, 265 F.3d at 74 (citing Powell v. Powell, 436 F.2d 84, 86 (2d Cir. 1970)). Federal courts do not have jurisdiction to "superintend the step-by-step conduct of local electoral contests or undertake the resolution of 'garden variety election irregularities.'" Id. (citing Griffin v. Burns, 570 F.2d 1065, 1076 (1st Cir. 1978)).

The First Circuit has found that "federal courts have jurisdiction over claims arising out of a state or local electoral dispute if, and to the extent that, the complaint limns a set of facts that bespeaks the violation of a constitutionally

guaranteed right." Bonas, 265 F.3d at 73-74. One such right is the right of all qualified citizens to vote. Id. at 74. Federal courts may also intervene in state or local electoral disputes where a party's claim arises from the alleged denial of equal protection or substantive due process. Id. A colorable claim based on the denial of substantive due process arises when failures in the election process "threaten to work patent and fundamental unfairness." Id.

Here, the Plaintiff has neither alleged in his complaint, nor demonstrated through evidence at the injunction hearing, that the facts of this case show a colorable deprivation of a constitutionally guaranteed right. Rather, the dispute in this case is based solely on whether Defendants violated Plaintiff's right under New Hampshire state law to obtain a recount without regard to whether he is likely to be declared the winner of the office he sought as a result of that recount. Therefore, the Court finds that this action is not properly before the federal court because the court does not have subject matter jurisdiction.

II. Likelihood of Success on the Merits

The Court's finding on subject matter jurisdiction above

notwithstanding, the Court goes on to address whether Plaintiff established through sufficient evidence that he is entitled to injunctive relief.  A court may grant a plaintiff's request for a preliminary injunction if the plaintiff satisfies a four-part test: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff will suffer irreparable harm if the injunction is not granted; (3) the injury to the plaintiff outweighs any harm that granting the injunction would inflict on the defendant; and (4) the public interest will not be adversely affected by the granting of the injunction.  See Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005).  "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."  New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).  Still, to obtain injunctive relief a party must independently satisfy each of the four factors.  See Auburn News Co. v. Providence Journal Co., 659 F.2d 273, 277 (1st Cir. 1981).

Here, even assuming that giving his application for a recount to the District Secretary instead of the Clerk was

proper,[4] the Court finds that the Plaintiff did not establish that he was likely to succeed in showing that he met the filing deadline.  There is no evidence supporting Plaintiff's testimony that his recount request was actually received by Ms. Lindstrom on January 27, 2005.  Plaintiff's request is stamped "RECEIVED," but there is no signature or initials on the document.  Ms. Lindstrom did not appear at the hearing to corroborate Plaintiff's claim that she accepted the application on the Clerk's behalf within the deadline.  There is also no dispute

---

[4] At the hearing, the Court requested that the parties make supplemental submissions addressing whether the New Hampshire Supreme Court's decision in Lachapelle v. Town of Goffstown, 593 A.2d 1152 (1991), applied in this case.  In Lachapelle, the court held that service of a writ against a town on the administrative assistant to the selectmen did not effect proper service of process on the town where the applicable statute, RSA 510:10, required service "upon one of the selectmen and the town clerk." Id. at 1153.  The court rejected the plaintiff's argument that service should be deemed effected under agency theory, stating that "[w]e decline to accept the plaintiff's invitation to redraft the statute to allow any alternative method of service." Id.

In response to the Court's request for further submissions, Plaintiff notes that a companion statute, RSA 510:12, provides that "[w]henever service of process or attachment is required to be made by leaving a copy at the abode of a town or city clerk, it shall be deemed sufficient service if the copy is left at his office, in case he has an office separate from his dwelling house."  Plaintiff argues that by analogy to this case, by making his request at the district office he should be deemed to have made proper application to the Clerk.  In light of the Court's findings herein, the Court need not decide this issue.

that Plaintiff had keys to the district office and access to the "RECEIVED" stamp.

Plaintiff's claim has been further undermined by the evidence that Plaintiff and Ms. Linstrom had a motive to lie about whether Plaintiff timely submitted his recount request. Plaintiff believed that the other commissioners had voted to terminate Ms. Linstrom's employment shortly before the election. And Plaintiff indicated to Ms. Netto days before his recount request was due that he wanted to extend his time in office in order to try to save Ms. Lindstrom's job.

After considering all of the evidence presented, the Court finds that the Plaintiff has not demonstrated that he is likely to succeed in demonstrating that he satisfied the procedural requirements for obtaining the right to a recount under RSA 669:30. Therefore, the Court further finds that Plaintiff has not demonstrated that he is likely to succeed on the merits of his claim, and that a preliminary injunction is not warranted.

## Conclusion

For the reasons set forth above, I recommend that Plaintiff's motion for a preliminary injunction (document no. 6) be denied. I further recommend that this case be dismissed for

lack of subject matter jurisdiction.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: May 15, 2006

cc: Raymond A. Stankunas, <u>pro se</u>
    Marie M. McPartlin, Esq.
    R. Matthew Cairns, Esq.